IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN H. MORLEY, JR.,** | : |
| **Plaintiff,** | : CIVIL ACTION |
| v. | : NO. 20-4591 |
| **U.S. DEPARTMENT OF THE NAVY,** *et al.*, | : |
| **Defendants.** | : |

**MEMORANDUM**

**TUCKER, J.** September __27th__, 2021

    Presently before the Court are Defendant Brett Burroughs's First and Second Motions to Dismiss (ECF Nos. 7 and 11), Plaintiff's Response in Opposition (ECF No. 12), and Defendant's Reply Brief in Further Support (ECF No. 13, Ex. A).

    Plaintiff John H. Morley brings this *Bivens* due process claim against Defendants United States Department of the Navy and Brett A. Burroughs, Security Branch Head for the Naval Foundry and Propeller Center ("the Foundry"), regarding the revocation of his access to the Foundry after a security violation on February 12, 2020. Defendant Burroughs moves to dismiss all claims against him asserting that Plaintiff impermissibly attempts to expand *Bivens* to include Fifth Amendment due process claims. For the reasons detailed below, the Motions to Dismiss are granted and all claims against Defendant Burroughs are dismissed.

**I.    FACTUAL BACKGROUND**

    The Naval Foundry and Propeller Center is a classified and sensitive U.S. Navy facility located at the Philadelphia Naval Yard, annexed from the Norfolk, Virginia Naval Shipyard. Defendant Burroughs is the Foundry's Security Branch Head and is supervised by Mr. Stephen White.

The U.S. Navy, Naval Facilities Engineering Command ("NAVFAC") hired NADIAD, Inc. to perform certain maintenance and construction projects on buildings within the Foundry. Am. Compl. 2-3.  Plaintiff, Mr. Morley, was a civilian subcontractor to NADIAD, Inc. for fire safety repair work.  On December 20, 2019 the United States Department of the Navy personnel met with him and other NADIAD, Inc. agents to provide information about security protocols. This training included whether weapons were allowed anywhere on Navy property and what constitutes a "weapon" for security purposes.  Defs.' Ans. 4.

Additionally, the signs posted at the security checkpoints to the Foundry indicated that weapons were not allowed at the checkpoint or the Foundry.  *Id.*  Mr. Morley was never given individual, official security clearance. The contracts he worked on did not require increased security clearance and he was always escorted when inside the facility. *Id.* at 5.  Plaintiff violated security protocols in December of 2019 which led to a temporary suspension of his access to the Foundry.  Defs.' First Mot. Dismiss 4.

Plaintiff again violated security protocols on February 12, 2020, when he brought a baton (a weapon) onto the Foundry.  Am. Compl. 4.  Later that day, Defendant Burroughs became aware of the incident and notified NADIAD, Inc. and other U.S. Navy Personnel, via email, that Mr. Morley's access to the Foundry had been revoked due to his second security violation.  Pl. Compl. 4.  In that email, Burroughs cited several statutes and regulations Mr. Morley violated by bringing the weapon into the checkpoint.  *Id.*

The next day, NADIAD, Inc.'s site manager, Mr. Brosius, contacted NAVFAC about Mr. Morley's loss of access but allegedly received no answer.  Am. Compl. 7.  Several weeks later, on February 21, 2020, Mr. Brosius asked Mr. Burroughs to reconsider the Navy's decision to

revoke Mr. Morley's access.  *Id.*  Mr. White denied the request to reinstate Mr. Morley's access to the Foundry because of his multiple security violations.  Defs.' Ans. 8.

On May 13, 2020, Department of Navy employees explained in writing that Mr. Morley's permission to work in the facility was revoked because of his failure to follow security requirements for accessing and working on Navy property. Mr. Morley was referred to White for additional questions.  Defs.' Ans. 9.  The Navy had multiple communications regarding the revocation of access with NADIAD, Inc., the prime contractor.  Defs.' First Mot. Dismiss 5.

Mr. Morley now asserts a claim under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against Defendant Burroughs for his participation in the decision to revoke Mr. Morley's access.  Mr. Morley asserts that he was denied due process when the U.S. Navy made its security determination that he should lose access to the Foundry.

## II.     LEGAL STANDARD

A Rule 12(b)(6) Motion to Dismiss seeks to test the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The touchstone of that pleading standard is plausibility.  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted).  Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*  A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).  Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Id.* at 556).

The Third Circuit set forth a three-part test that district courts must apply when evaluating whether allegations survive a 12(b)(6) motion to dismiss. *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010). A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). If the complaint fails to do so, the motion to dismiss will be granted.

### III. DISCUSSION

In *Bivens*, the Supreme Court held there was an implied right of action to sue federal agents for violating an injured person's Fourth Amendment right to be free from an unreasonable search and seizure in the context of a federal drug arrest. 403 U.S. 388 (1971). The Court held there were "no special factors counselling hesitation," so they "implied" a damages remedy where Congress had not specifically created liability against federal agents. *Id.* at 396.

After *Bivens*, the Supreme Court granted two more implied causes of action for constitutional violations by federal defendants. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court authorized a claim under the Fifth Amendment when a Congressional staffer was fired because of her gender. In *Carlson v. Green*, 446 U.S. 14 (1980), the Court authorized a private right of action for inadequate medical care under the Eighth Amendment for an individual incarcerated at a Federal Bureau of Prisons facility. Since *Carlson*, the Supreme Court has consistently declined to expand *Bivens* and provide a private right of action to injured persons against federal defendants.

This is evidenced by the Supreme Court's ruling in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and its progeny, when it refused to extend *Bivens* to include due process claims

concerning security considerations at military installations. Moreover, *Abbasi* clarified the special factors framework, holding that a court evaluating a *Bivens* claim must first determine if the claim arises in a new context as compared to *Bivens*, *Davis* and *Carlson*. 137 S. Ct. at 1859-60. If a case presents "a new *Bivens* context," then "a special factors analysis [is] required" before a court may allow a proposed "damages suit to proceed." *Id.* at 1860.

A *Bivens* remedy is not available if there are special factors counselling hesitation—the special factors indicate that Congress, not the courts, should decide whether a damages action should be allowed. *Id.* at 1849, 1857. The standard is: whether the case differs "in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* at 1859. Some of the meaningful differences for a court to consider include: the constitutional right at issue, the legal mandate under which the officer was operating, and the defendants being sued. *See Abasi*, 137 S. Ct. at 1857, 1859-60. Another important "special factor" is whether an alternate remedy exists, which forecloses the possibility of a *Bivens* remedy. *Id.* at 1858. The alternate remedy special factor exists when there is "any alternative, existing process for protecting [the injured party's] interest. *Id.* (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

Mr. Morley's claims arise in a "new *Bivens* context" since courts have not found an implied private right of action for due process claims for a private contractor's inability to directly appeal the security decisions of military personnel. Accordingly, special factors analysis is required and the Supreme Court counsels hesitation with regards to expanding the *Bivens* remedy.

In the instant case, the constitutional right at issue differs from the ones considered in *Bivens*, *Davis* and *Carlson*. Morley alleges a due process violation of the Fifth Amendment connected to the revocation of his site access for security reasons. *Bivens* was a Fourth

Amendment search-and-seizure case; *Davis* was a Fifth Amendment equal protection case alleging sex-discrimination; *Carlson* was an Eighth Amendment medical care case. *Loumiet v. USA*, 948 F.3d 376, 382 (DC Cir. 2020) (internal citations omitted). Secondly, the legal mandate under which Burroughs operated significantly differs from the ones at issue in *Bivens*, *Davis* and *Carlson*. Here, the dispute arose because of the enforcement of security protocols at a military installation, "whereas *Bivens* involved the enforcement of federal drug laws; *Davis* involved employment decisions by members of Congress; and *Carlson* involved the provision 8 of medical care to prisoners." *Loumiet v. USA*, 948 F.3d at 382 (internal citations omitted).

Thirdly, Morley seeks compensation from a new category of defendants. Defendant Burroughs is the Security Branch Head at a Naval Shipyard installation, the Foundry. By contrast, "the defendants in *Bivens* were federal narcotics agents; the defendant in *Davis* was a former member of Congress; and the defendants in *Carlson* were federal prison officials." *Id.*

Finally, Mr. Morley has an Administrative Procedure Act ("APA") remedy for his alleged injuries against the U.S. Navy. Mr. Morley argues that his APA claim does not adequately redress his injuries (monetary damages for his broken contract and the damage to his professional reputation), Pl.'s Resp. Opp. Mot. Dismiss 8-9, but courts have resisted creating a judicially implied remedy against federal agents even when the available statutory remedies "do not provide complete relief" for a plaintiff that has suffered a constitutional violation. This is because the provision of this remedy, or the lack thereof, should be left to Congress." *See Wilkie*, 551 U.S. at 550; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001); *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988); W*estern Radio Services Co. v. U.S Forest Service*, 578 F.3d 1116, 1120 (9th Cir. 2009). Mr. Morley's claims fall under four separate special factors necessitating denial of a *Bivens* remedy.

Plaintiff argues that Defendants' collective actions serve as *de facto* debarment of Mr. Morley from performing his contract or any future work at the Foundry, thereby infringing upon his due process rights under *Phillips v. Mabus*, 894 F. Supp. 2d 71, 83 (D.D.C. 2012); *Leslie & Elliott Co. v. Garrett*, 732 F. Supp. 191, 196 (D.D.C. 1990); and *Art-Metal-USA, Inc. v. Solomon*, 473 F. Supp. 1, 4 (D.D.C. 1978).  Pl.'s Resp. Opp. Mot. Dismiss 5.  Plaintiff's access was revoked due to security concerns, which is a different procedure than debarment. *De facto* debarment occurs when a contractor has, for all practical purposes, been suspended or blacklisted from working with a government agency without due process, namely, adequate notice and a meaningful hearing." *Phillips*, 894 F. Supp. at 81.  In their answer to the Amended Complaint, Defendant United States Dept. of the Navy notes that: the revocation of access does not prohibit Mr. Morley from applying or joining any future bid for construction work at the Foundry; nor does it disqualify him from having future access as part of any successful bid to perform construction work at the Foundry.  Defs.' Ans.10.  Mr. Morley does not fall within the limits of *de facto* debarment.

Because Defendants' actions are not a *de facto* debarment of Mr. Morley from contract work with the Foundry, and two special factor considerations necessitate this Court denying Mr. Morley's request for a *Bivens* remedy, the claims against Mr. Burroughs are dismissed with prejudice.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (listing futility as a reason for denying leave to amend).  The Court does not reach the question of Mr. Burrough's qualified immunity.

### IV.    CONCLUSION

Plaintiff has failed to plead sufficient facts to allege that Defendant Burroughs violated his due process rights in revoking access to the Foundry. Plaintiff erroneously relies on *Bivens* to

assert an implied right of action against federal agents, as his claims are clearly distinguishable from *Bivens*, *Davis*, and *Carlson* and would require an expansion of the remedy at odds with precedent. Accordingly, Defendant's Motions to Dismiss are **GRANTED** and all claims against him are **DISMISSED WITH PREJUDICE**. Defendant Burroughs is dismissed as a party from this action.

    An appropriate order follows.